UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN L. FOWLER,

                Plaintiff,

v.                                         Case No.  5:05-cv-299-Oc-10GRJ

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

                Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

       Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and Supplemental Security Income.  (Doc. 1.) The Commissioner has answered (Doc. 8) and both parties have filed briefs outlining their respective positions. (Docs. 12 &14). For the reasons discussed below the Court finds that the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

       Plaintiff filed an application for a period of disability, disability insurance benefits and Supplemental Security Income alleging an onset date of June 15, 1996. (R. 52, 220-226.) His claim was denied initially (R. 39) and upon reconsideration (R. 36). Plaintiff filed a request for a hearing and a hearing was held before Administrative Law

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

Judge R. Neil Lewis (the "ALJ") on October 4, 2004. On January 25, 2005 the ALJ issued a decision unfavorable to Plaintiff. (R. 17-22.) Plaintiff's request for review of that decision was denied by the Appeals Council on April 29, 2005,[2] rendering the ALJ's decision the final decision of the Commissioner. (R. 4.) On June 29, 2005, Plaintiff filed the instant appeal to this Court of the Commissioner's final decision. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking

---

[2] The Appeals Council initially denied Plaintiff's request for review on April 21, 2005. (R. 8.) Plaintiff submitted additional evidence (R. 7), but the Appeals Council again denied review on April 29, 2005. (Doc. 4.)

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[6]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[11]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[6] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

3

not have a severe impairment and is not disabled.[12]  Third, if a claimant's impairments

meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

disabled.[13]  Fourth, if a claimant's impairments do not prevent her from doing past

relevant work, she is not disabled.[14]  Fifth, if a claimant's impairments (considering her

residual functional capacity ("RFC"), age, education, and past work) prevent her from

doing other work that exists in the national economy, then she is disabled.[15]

   The burden of proof regarding the plaintiff's inability to perform past relevant work

initially lies with the plaintiff.[16]  The burden then temporarily shifts to the Commissioner

to demonstrate that "other work" which the claimant can perform currently exists in the

national economy.[17]  The Commissioner may satisfy this burden by pointing to the Grids

for a conclusive determination that a claimant is disabled or not disabled.[18]

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[17] Doughty, 245 F.3d at 1278 n.2.  In Doughty the court explained this burden shifting as follows:
   In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[18] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[19]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. <u>SUMMARY OF THE RECORD</u>

#### A. <u>Personal Background</u>

At the time of the hearing, Plaintiff was fifty-three and had graduated from high school. (R. 237, 67, 238.) In the fifteen years prior to Plaintiff filing his application for disability determination, Plaintiff held two jobs. From 1983-1996, he owned and worked

---

[19] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 ( 11th Cir. 1996).  *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[20] <u>Walker</u>, 826 F.2d at 1003.

[21] <u>Wolfe</u>, 86 F.3d at 1077-78.

[22] <u>See</u> <u>id.</u>

at the bar Johnnie's Place. As the owner of his own bar, Plaintiff worked long hours, spending twelve hours a day walking, standing or sitting. He had to reduce his hours and workload in the later years of his ownership. This job involved lifting objects weighing up to fifty pounds, but frequently only lifting objects of less than ten pounds. (R. 79.)

From January of 2001 through June of 2001, Plaintiff worked for Reno Plumbing as a water meter reader. As a water meter reader, Plaintiff's job involved working for ten hours over the period of one week. This job did not require him to lift any objects weighing more than ten pounds. It required him to walk, stand, and sit for about five hours each day. (R. 78.)

## B. Medical History

Plaintiff alleges that he became disabled due to acid reflux (R. 97, 183-84), fatigue, back pain, incontinence, memory and concentration problems and cold hands and feet. Plaintiff also suffered from various gastrointestinal disorders including irritable bowel syndrome, gastritis, colitis, and rectal bleeding.  (R. 89, 70-76, 99, 101, 104-106, 109-15, 117-18,121-24, 126, 130, 133, 136-37, 153-60, 175-84, 186, 188, 192-194, 199, 201, 204, 209, 219, 233-34, 241-42, 244-47). Plaintiff also alleged disability due to chronic depression (discussed below) and prostatitis. (R. 215.) However, the only issue raised in this appeal concerns the ALJ's determination with regard to Plaintiff's mental impairment. The Court will, therefore, focus the discussion of the record upon the evidence pertaining to Plaintiff's mental impairment.

The record provides only limited documentation of Plaintiff's alleged incidences of depression. Around August of 2001,  Plaintiff went to the emergency room claiming to

feel weak and tired. He was told that his symptoms were psychiatric and prescribed Prozac. (R. 112.) Plaintiff stopped using Prozac by March of 2002. (R. 110.)

On December 11, 2002, Dr. Bortnick performed a consultative mental status evaluation of Plaintiff. Plaintiff denied a history of psychological problems except bereavement after his parents died. Plaintiff stated that he had never been treated by a mental-health professional. Dr. Bortnick noted that the Elavil recommended by his gastroenterologist serves as both an anti-depressant and analgesic. (R. 138.) He found that Plaintiff was friendly, cooperative, alert and oriented and knew various basic facts (days of the week, current and past presidents, five nickels equals a quarter, etc.). (R. 138.) Plaintiff's affect, behavior, dress, speech, and personal grooming were appropriate. (R. 139.) Dr. Bortnick observed that Plaintiff could walk, sit, and stand without difficulty, his vision and hearing were satisfactory, and gross and fine motor-skills were intact. Plaintiff did not exhibit any signs of lethargy, weakness, or hyperactivity and smiled and laughed appropriately. His recent and remote memory were satisfactory, and he had no trouble concentrating and paying attention. (R. 139.)

Plaintiff described his daily routine to Dr. Bortnick, stating that he showers, dresses, and performs all self-care behavior without assistance. He eats breakfast and does some weeding or landscaping in the morning. He cooks, prepares meals, and performs housekeeping chores, claiming that he "keeps a real-clean house." He shops for groceries once a week and pays for his purchases. He talks on the telephone to his children and siblings and has friends visit him or he occasionally visits them. He owns a mobile home in Gainesville which he rents to others. He also owns a fishing boat, but rarely uses it. At night, he watches television. (R. 139.)

Dr. Bortnick recommended that Plaintiff was a candidate for vocational-rehabilitation and did not suffer from any psychosis or mental illness. He diagnosed Plaintiff with Adjustment Disorder with Depressed Mood by History in Remission and Nicotine Dependence. Dr. Bortnick concluded that Plaintiff has the mental ability to work and can manage his own finances. (R. 139.) Dr. Bortnick did not perform any further diagnostic psychological testing because none was indicated.

Dr. Zelenka completed a Psychiatric Review Technique for the agency in 2002. He noted that Plaintiff had no medically determinable mental impairment. (R. 152.) Dr. Gary W. Bulfone completed a Psychiatric Review Technique completed in 2003 noting that Plaintiff had a non-severe affective disorder--adjustment disorder, mixed of anxiety/depression, in remission (R. 161,164, 173)) – which did not limit Plaintiff's ability to complete activities of daily living, maintain social functioning, concentration, persistence, or pace to any degree. Plaintiff suffered from no episodes of decompensation. (R. 171.) Dr. Bulfone noted that Plaintiff suffered from some depression in remission which was treated with Prozac and anxiety which was treated with Zoloft. He concluded that Plaintiff had mild symptoms which were effectively treated with medication. (R. 173.)

A certified physician's assistant at the Weirsdale Family Health Center, Inc. noted that Plaintiff was experiencing depression in August of 2002. (R. 209) In a letter, Plaintiff stated that he was taking antidepressants because he was upset about his physical condition. (R. 234.)  Further, Plaintiff testified at his hearing that he was depressed because he "can't do the things [he] wants to do. [He] can't work." However, he has not gone to vocational services or rehabilitation for help. (R. 248.)

8

## IV. **DISCUSSION**

The Plaintiff contends that the ALJ erred by failing to find Plaintiff's mental impairment severe at step two. The Plaintiff does not raise any other issues with regard to the ALJ's analysis of Plaintiff's other complaints. The burden is upon the Plaintiff at step two of the sequential analysis to establish that he has a severe impairment, although generally the threshold is minimal and easily met.[23]

Here, the ALJ found at step two that Plaintiff's depression, or adjustment disorder, was "not severe." The ALJ made this finding based upon the substantial evidence in the record which demonstrated that Plaintiff's depression placed no limitations on his activities of daily living nor social functioning, nor caused any deficiencies of concentration, persistence or pace and did not cause any episodes of decompensation.

In concluding that the Plaintiff's depression was in remission and there was no evidence that there had been any limitations in Plaintiff's activities of daily living attributable to a mental impairment, the ALJ relied upon, among other evidence, the examination of Plaintiff by Dr. Bortnick . Dr. Bortnick noted that Plaintiff did not suffer from any mental illness or psychosis which would prevent him from working and found that Plaintiff was an appropriate candidate for vocational rehabilitation. Dr. Bortnick specifically found that Plaintiff did not suffer from any deficits in his memory nor in his ability to concentrate. Dr. Bortnick also described in detail the activities Plaintiff engaged in on a daily basis, which evidenced that Plaintiff did not have difficulties in social functioning nor difficulties in caring for himself.

---

[23] McDaniel v. Bowen, 800 F.2d 1026, 1031(quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)).

9

In addition, none of Plaintiff's treating physicians, who documented incidences of depression or anxiety, noted any limitations upon Plaintiff's daily functioning as a result of depression or anxiety. Moreover, several physicians noted that medication helped Plaintiff but the record reveals that Plaintiff only took such medication for a limited period of time.[24] Whether Plaintiff was taking medication or not, his mental processes continued to function normally and the substantial evidence establishes that Plaintiff's mental status did not limit his abilities in any way.[25]

Plaintiff suggests that the ALJ should not have based his findings upon Dr. Bortnick's consultative evaluation because Dr. Bortnick did not perform any psychological tests nor rely upon any "longitudinal data." Specifically, Plaintiff argues that Dr. Bortnick's evaluation should not be relied upon because Dr. Bortnick did not perform a multi-axial evaluation. These arguments are misplaced for several reasons. First, the Plaintiff has the burden to prove that he has a debilitating disability by placing evidence into the record of that disability.[26] The ALJ may only make his decision based upon the evidence before him.[27] Plaintiff was represented at the hearing and received

---

[24] Plaintiff began taking Prozac for depression in August of 2002 and stopped taking Prozac by March of 2002. (R. 112-110.) Plaintiff continued to take Elavil which can be used to treat depression or anxiety. However, Elavil was prescribed by Plaintiff's gastroenterologist at Digestive Disease Associates as an analgesic to treat his irritable bowel syndrome. (R. 110.) Plaintiff was also prescribed Zoloft, although it is not clear from the record when he began taking this medication or if Plaintiff used it for an extended period of time.

[25] Henderson v. Sullivan, 930 F.2d 19, 20 (8th Cir. 1991) (affirming decision of ALJ where treating psychologist noted no disability due to dysthmic disorder (depression) where mental disorder treated with medication).

[26] See Thorton v. Schweiker, 663 F.2d 1312, 1316 (5th Cir. 1981); see also 20 C.F.R. §§ 404.1513(c) and 416. 913(c).

[27] See 20 C.F.R. §§ 404.1516, 416.916.

10

notification of his obligation to provide medical evidence.[28] (R. 31-34, 43.) Nonetheless, Plaintiff never requested such testing nor was the need for such testing indicated.

Secondly, Plaintiff told Dr. Bortnick that he had never received treatment by a mental health professional before this examination. Thus, there was little, if any, reason for such testing  - and because the Plaintiff had never received any treatment it follows that there would not be any longitudinal data for Dr. Bortnick to review in making his evaluation. Thus, even though Dr. Bortnick did not perform further testing and did not rely upon longitudinal data, his evaluation still constitutes substantial evidence that supports the ALJ's decision.

Accordingly, the ALJ did not err by finding that Plaintiff's mental impairment was "not severe" at step two because the substantial evidence in the record supports the finding that Plaintiff's depression did not impact his ability to perform basic work activities.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, on August 14, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record

---

[28] Allen v. Schweiker, 642 F.2d 799 (5th Cir. 1981).

11